# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEVIN LONG, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THOMAS J. DART, et al., ) <br> ) <br> Defendants. ) <br> ) | No. 14 C 6361 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM ORDER AND OPINION

Presently before the Court is a Partial Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6), [Doc. No. 20], filed by defendants Thomas J. Dart and Cook County, Illinois (collectively "Defendants"). Plaintiffs Kevin Long ("Long"), Gregory Koger ("Koger"), and Barbara Lyons ("Lyons") (collectively "Plaintiffs"), oppose the motion. For the following reasons, the Court denies Defendants' Motion.

# BACKGROUND[1]

Plaintiffs are a group composed of two former Cook County Jail ("CCJ") inmates, Long and Koger, and a concerned citizen who corresponds with and sends books to current inmates, Lyons. Together, they now challenge the constitutionality of three policies/practices at the CCJ:

1) the prohibition on inmates having more than three books or magazines in their cells at one time;
2) the "religious exemption" to that prohibition, whereby an inmate may have more than three religious books or magazines; and
3) the alleged arbitrary and inconsistent enforcement of these policies

Beyond being unconstitutional on their face, Plaintiffs claim these policies/practices have violated their First Amendment rights in a variety of ways. In Lyons' case, she claims the three-book limit and the threat of confiscation prevent her from sending as much literature as he wants to current inmates, which amounts to an impermissible restriction on her speech. Long and Koger share a similar story, but experienced the CCJ's policies first-hand: on October 5, 2013 — while they were incarcerated — CCJ staff confiscated over forty books from their respective cells.

These restrictions came as a great surprise to Plaintiffs, particularly because the CCJ mailroom policy, as set forth in the inmate handbook, states that inmates may receive an unlimited number of paperback books and magazines as long as the books arrive in groups of three or less per mailing. Moreover, until October 5, 2013, neither Long nor Koger had ever heard of the three-book limit being enforced during their stay at the CCJ, which, in Koger's case, lasted four years. Accordingly,

---

[1] The following facts appear as they are alleged in the Complaint.

Plaintiffs filed a one-count Complaint pursuant to 42 U.S.C. 1983, alleging, in pertinent part, the following:

> The policy limiting inmates to possessing three total books and magazines is overbroad on its face; the confusing and contradictory policies fail to give fair and adequate notice to detainees and individuals who seek to send reading materials to detainees, thereby chilling Plaintiffs' and others from engaging in protected First Amendment speech; and by privileging religious books over non-religious books, the policy violates the mandate for governmental neutrality between religion and non-religion.

(Compl. at 6 [Doc. No. 1].) To remedy these alleged harms, Plaintiffs now seek a declaratory judgment that the CCJ's three-book policy is unconstitutional, a preliminary and permanent injunction barring Defendants and their agents/employees from enforcing the policy, compensatory damages, and nominal damages. Defendants, however, doubt that Plaintiffs have standing to pursue declaratory and injunctive relief, and thus filed the instant Motion.

## **STANDARD OF REVIEW**

In reviewing a motion to dismiss under Rule 12(b)(6), courts takes as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a 12(b)(6) motion, the claim first must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Second, the factual allegations in the claim must be

sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citation and quotation omitted). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citation and quotation omitted).

## **DISCUSSION**

The gravamen of Defendants' argument is that Plaintiffs lack standing to pursue declaratory or injunctive relief. On Defendant's account, entitlement to such relief is available only where a plaintiff is suffering an ongoing harm or likely to suffer such harm again. And because no Plaintiff is currently incarcerated at the CCJ, it follows that none of them is suffering an immediate harm. If this were a different context, outside of the First Amendment, Defendants might be correct. But this case presents an overbreadth challenge, and the Court finds that Plaintiffs do, in fact, have standing to pursue all of their claims, despite their distal relationship to the CCJ.

As with all challenges to standing, the starting point is Article III's "case or controversy" requirement. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). To demonstrate Article III standing, a plaintiff must show (1) that she has suffered an actual or threatened injury, (2) that such injury is fairly traceable to the actions of the defendant, and (3) that a favorable decision by a court would likely redress

4

the alleged harm. *Id.* Plaintiffs satisfy each of these requirements. In Long and Koger's case, they allege that their property was confiscated according to an unconstitutional policy. Similarly, for Lyons, she claims that her long-standing practice of corresponding with inmates and sending books has been chilled by the CCJ's policy and arbitrary enforcement. Wrongfully confiscated property and chilled speech are injuries that unquestionably support standing,[2] *See Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000); *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995), and therefore Plaintiffs have sufficiently alleged an injury in fact. Clearly, those alleged injuries are also traceable to Defendants' conduct, and a favorable decision by this Court (e.g., an injunction or damages) would remedy the alleged harm. As such, Plaintiffs have presented a cognizable case or controversy under Article III.

In addition to the Article III standing, however, the federal judiciary has established certain prudential boundaries on standing. Those constraints are particularly demanding in the context of prospective equitable belief: a plaintiff must typically show a significant likelihood of sustaining an immediate, irreparable injury. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 75 (1983). And this is precisely

---

[2] Defendants attempt to vitiate Lyons' standing on the grounds that she did not have any books confiscated and therefore suffered no injury. But this argument lacks merit. In a suit for prospective relief based on a chilling effect on speech, a plaintiff can demonstrate a cognizable injury by alleging (1) that in the past, she has engaged in the type of speech affected by the challenged government action, (2) that she has a present desire to engage in such speech, and (3) that she presently has no intention to do so because of a credible threat of enforcement. *See Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012). This is precisely what Lyons alleges in the Complaint, and therefore Defendants' argument fails.

where Defendants believe Plaintiffs miss the mark. No Plaintiff is currently incarcerated, and therefore none is suffering a sufficiently immediate threat to justify declaratory or injunctive relief. The Court disagrees.

Even if Defendants' contentions regarding the immediate threat to Plaintiffs' own First Amendment rights were to be accepted, the critical claim here is that the CCJ's three-book limit is unconstitutionally overbroad. As such, Plaintiffs' claim necessarily contemplates the First Amendment rights of current CCJ inmates, who are surely experiencing a real and immediate (alleged) harm. *See Bell*, 697 F.3d at 454 ("Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of [others and] society [as a whole].") (citation and quotation omitted). And although, as Defendants note, such a claim threatens to run afoul of the principle that litigants may not assert the rights and interest of third parties, *see generally Warth v. Seldin,* 422 U.S. 490, 499 (1975), the doctrine of overbreadth provides a unique exception to that principle. As explained by the Supreme Court:

> Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Secretary of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 956 (1984). The Seventh Circuit has similarly followed the Supreme Court's lead in refusing to place a premium on prudence in the First Amendment context, *see, e.g., Penny Saver*

6

*Publications v. Village of Hazel Crest,* 905 F.2d 150, 154 (7th Cir. 1990), and this Court elects to do the same.[3]

The sole remaining issue for overbreadth standing, then, is whether Plaintiffs "can be expected to satisfactorily frame the issue" on behalf of those whose rights they wish to represent. *Munson*, 467 U.S. at 958. Defendants have not put forth any reasons why Plaintiffs would not be able to represent adequately the First Amendment interests of current CCJ inmates, nor can the Court conceive of any. As such, the Court declines to dismiss Plaintiffs' claims for prospective equitable relief on the basis that they lack standing.[4]

---

[3] Although Defendants make much of the Supreme Court's consistent holding that, typically, a plaintiff's past exposure to illegal conduct is insufficient to confer standing for prospective injunctive relief, none of Defendants' cited cases pertain to First Amendment overbreadth challenges.

[4] In their reply brief, Defendants argue that overbreadth standing does not apply to claims for injunctive relief, but this argument is too clever by half. Apart from citing no case law to support this point, Defendants fail to counter the proposition that protecting the First Amendment rights of others is the *sine qua non* of overbreadth challenges, and that injunctions are the proper tool for the task. *See Schaumburg v. Citizens for Better Env't*, 444 U.S. 620, 634 (1980) (explaining that even plaintiffs whose own speech is unprotected may attack the constitutionality of an overbroad statute on behalf of others); *Bell*, 697 F.3d at 452 (explaining that injunctive and declaratory relief is *mandatory* in successful overbreadth challenges). Therefore, requiring litigants to demonstrate a real and immediate *personal* injury in order to prospectively enjoin an overbroad statute would essentially backdoor the prudential concerns admonished by the Supreme Court and Seventh Circuit, as discussed above.

## CONCLUSION

For the reasons set forth above, the Court denies Defendants' Partial Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6), [Doc. No. 20].

**SO ORDERED.**                      **ENTERED:**

**DATE:**    April 15, 2015

                                               **HON. MARIA VALDEZ**
                                               **United States Magistrate Judge**