IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA LYONS, GREGORY KOGER, and SHAKIRA CARTER | ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 6361 |
| v. | ) ) | Magistrate Judge Maria Valdez |
| THOMAS J. DART and COOK COUNTY, ILLINOIS. | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Barbara Lyons ("Lyons") and Shakira Carter ("Carter") sent books and magazines to two individuals housed in Cook County Jail ("CCJ"). Specifically, Lyons sent books to Plaintiff Gregory Koger ("Koger") during his time as an inmate at CCJ. All but three of Koger's books were confiscated by jail staff. Plaintiffs brought suit claiming CCJ's three book limit is a violation of their right to free speech, and have moved for summary judgment. [Doc. No. 115]. Defendants Tom Dart and Cook County argue that the Plaintiffs lack standing to assert the claims and also contend that the three book limit serves valid penological interests and is not unconstitutional. Defendants have also moved for summary judgment [Doc No. 118]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, Plaintiffs' motion is denied, and Defendants' motion is granted.

1

# BACKGROUND[1]

Plaintiff Gregory Koger was serving a 300-day sentence between July and October of 2013, in the Cook County Jail ("CCJ"). [*Pls.' SOF* at ¶1]. During this time, Koger asked friends to send him books and other reading materials. [*Id.* at ¶4]. Barbara Lyons is one of Koger's friends and is a frequent communicator with prison inmates. [*Id.* at ¶11]. Lyons mailed Koger reading materials, including more than ten books, and an issue of the Chicago Tribune. [*Id.* at ¶¶10, 11]. Jail records show that during his sentence, Koger received 42 books and one magazine. [*Id.* at ¶2]. While it is disputed that Koger was permitted to possess more than three books in his cell, it appears that for most of his detention, Koger physically possessed more than three books in his cell at a time. [*Id.* at ¶3].

On October 5, 2013, CCJ corrections officers searched Deck 3A of Division 10 jail, where Koger was housed. [*Id.* at ¶5]. The parties dispute what occurred during this search. [*Id.* at ¶6]. The Plaintiffs claim that books were taken during this search. [*Id.*]. According to Koger, correctional officers confiscated more than thirty books from him and left him with three books, not bothering to ask which three books he wanted to keep. [*Id.*]. Koger claims he never saw these books again. [*Id.*]. The other witnesses detained in that search: Gerald Washington, Jerry Collins, Uzziel Roman, and Jovanny Martinez, similarly stated that correctional officers confiscated books and magazines from them and all other inmates in that housing unit, leaving each inmate with no more than three books. [*Id.* at ¶7].

---

[1] The following facts are taken from the parties' Local Rule 56.1 Statements ("SOF") and are uncontested unless otherwise noted.

The Defendants dispute that Koger had thirty books taken and that he was not permitted to select which books he wanted to keep. [*Defts.' Resp. to Pls.' SOF* at ¶6]. One of the Defendants' witnesses, Sergeant Peter Giunta, the officer in charge of the team that conducted the search, stated that he had no personal recollection of the search, but did not "recall" any books or magazines being taken during the search. [*Pls.' SOF* at ¶8]. Giunta also testified that had books or magazines been taken, he would have documented it. [*Id.*]. Defendants also cite to the October 5, 2013 Search Report, which does not indicate any books were taken. [*Id.* at ¶6].

The policy used to confiscate the excess books found during the search is a formal written policy found in the Inmate Information Handbook (the "Handbook") titled "Items Allowed in Your Cell". [*Id.* at ¶¶15, 16]. The policy limits the amounts of property an inmate may possess in two ways. [*Defts.' SOF* at ¶2]. First, inmates may possess only certain amounts of individual, numerically-limited items. [*Id.*]. For example, inmates may only possess one comb, one bar of soap, four pairs of socks, etc. [*Id.*] Books and reading materials are also limited by this numerical policy. [*Id.* at ¶6]. Specifically, inmates may only possess: "THREE (3) TOTAL-MAGAZINES OR BOOKS PER INMATE (religious material excluded)." [*Pls.' SOF* at ¶15].

The Plaintiffs interpret this policy to mean that CCJ inmates are prohibited from having more than three total books and/or magazines in their cell. [*Id.*] The Defendants however interpret this policy to mean that CCJ inmates may keep unlimited materials, one Bible or Koran, one study book, and three magazines or

books, not including religious material. [*Defts.' Resp. to Pls.' SOF* at ¶15; *see also Defts.' SOF* at ¶29].

The second limitation imposed on inmates and their property is an overall volume limit on all personal items. [*Defts.' SOF* at ¶2.] Excluding shoes, all other personal property, included numerically limited items, must fit inside a "property bag." [*Id.*; *see also Pls.' SOF* at ¶¶ at 27, 28]. The property bag is now the predominant container for storing inmate property, and is approximately 2 cubic feet in size. [*Pls.' SOF* at ¶29; *see also Defts.' SOF* at ¶20].

If an inmate is in possession of materials in violation of either the numerical limit or volume limit, it is undisputed that the inmate would be considered to possess "contraband." [*Pls.' SOF* at ¶17]. The Handbook defines the possession of contraband as an offense that can result in discipline and/or criminal charges. [*Id.* at ¶18].

It is undisputed that there is no temporal limit on books and magazines kept in an inmate's cell. [*Defts.' SOF* at ¶7]. Detainees are permitted to discard books and magazines if they have too many, share books and magazines with other detainees, check out up to two books from the public library, and receive new books and magazines through the mail or from other sources. [*Id.*] The Defendants claim there are numerous justifications for the numerical and volume limits on personal property. [*Pls.' SOF* at ¶24].

**DISCUSSION**

Before the court are Plaintiffs' and Defendants' cross-motions for summary judgment. Plaintiffs contend they are entitled to summary judgment because: (1) CCJ's policy violates the rights of prisoners and persons outside the jail who seek to communicate with inmates; (2) CCJ's policy is not constitutional under the four-factor *Turner* test; (3) case law establishes the importance of reading in a penological setting; and (4) *Monell* liability exists against Sheriff Thomas J. Dart. Defendants respond that: (1) Plaintiffs lack standing to pursue this case; (2) each factor of the *Turner* test favors Defendants; and (3) no deprivation of property occurred because Plaintiffs have an alternative remedy under state law. Because this Court finds that the Plaintiffs lack standing, the Court will only address the parties' arguments on that issue.

**A. Plaintiffs Lyons and Carter do not have standing.**

Now at summary judgment, the Court will evaluate whether the plaintiffs Lyons or Carter[2] has established facts to support standing to seek injunctive relief in this case. Standing is a threshold issue that must be determined before the Court may consider any substantive issues. *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232 (7th Cir. 1983) ("Since standing is a threshold issue, we must address it first.") As with all challenges to standing, the starting point is Article III's "case or

---

[2] The court granted Plaintiffs' Motion For Leave to File *Instanter* The Attached First Amended Complaint on Oct. 30, 2015, whereby Carter was properly added as an additional plaintiff in this case. [68]. Carter sent books, magazines, and other reading materials to her fiancée throughout his detention in CCJ and seeks to do so in the future. She has never been incarcerated at CCJ. [Doc. 57, Ex. 1 at ¶8].

controversy" requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). To demonstrate Article III standing, a plaintiff must show (1) that she has suffered an actual or threatened injury; (2) that such injury is fairly traceable to the actions of the defendant; and (3) that a favorable decision by a court would likely address the harm. *Id.* at 559–61. The party seeking to be heard in federal court must prove each element of standing with specificity. *Lujan*, 504 U.S. at 561 ("Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.")

Senders of books and inmates have a First Amendment interest in communicating subject to regulation that furthers legitimate penological interests. See *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1987); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 140 (2010). "[T]hreatened injury must be '"certainly impending"' to constitute injury in fact," and "[a]llegations of possible future injury do not satisfy the requirements" of Article III. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely

6

possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. at 298–99 *quoting Younger v. Harris*, 401 U.S. 37, 42 (1971).

"Chilled speech is, unquestionably, an injury supporting standing . . ." *Bell v. Keating*, 697 F.3d 445, 453 (7th Cir. 2012). But a plaintiff's "notional or subjective fear of chilling is insufficient to sustain a court's jurisdiction under Article III." *Bell*, 697 F.3d at 453–57; *see also Schmidling v. City of Chicago*, 1 F.3d 494, 499 (7th Cir. 1993) ("anticipation, fervor of advocacy, speculation, or even fear is not enough" to establish a cognizable Article III injury.")

Here, the proof presented by Lyons and Carter does not give rise to standing. Although Lyons and Carter express that they have been "chilled" into no longer sending reading materials to detainees at CCJ, this simply does not constitute a credible threat of prosecution which amounts to an injury-in-fact. The closest Lyons comes to providing any evidence that her exercise of speech would result in punishment is her testimony that she refrains from sending books to the inmates at CCJ because they may be confiscated, even though she does not believe she can be punished for sending more books or magazines to an inmate at CCJ than he is allowed to have in his cell. (*Defts.' SOF* at ¶40, Doc. No. 60, Ex. 1 at 94:5–13). Through her testimony, Lyons revealed that she had never been fined, arrested, threatened or otherwise punished for sending book or magazines to CCJ. (*Id.* at 56:6–15, 117:15–22). Carter's testimony that she "stopped sending" books after learning of the three-book limit and the occasions on which her fiancée's books were confiscated because it was a "waste of time" and money, is likewise absent of any

7

credible proof of punishment. (*Defts.' SOF* at ¶41, Ex. 4 at 121:20–123:10.) Carter similarly testified that she had never been threatened with any kind for sending book or magazines to inmates at CCJ. (*Id.* at 63:11–24.) Based on these statements, it is clear that Lyons and Carter self-censorship arises from a fear of punishment that is far too speculative to confer First Amendment standing to either. *Schmidling*, 1 F.3d at 499 ("For the purposes of determining standing, we are initially and primarily concerned with the threat of prosecution, not with a litigant's anticipation of it.") (citation omitted).

Lyons and Carter assert that they nonetheless still have standing to pursue their injunctive relief claim based on the principle that censorship of prisoner mail affects the rights of senders. In particular, Lyons and Carter claim that CCJ's policy directly interferes with their ability to communicate with inmates and unduly restricts their ability to send more than three books and/or magazines without at least some of the materials being discarded.

There can be no doubt that "non-prisoners do indeed have a First Amendment right to correspond with prisoners." *See Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (*citing Thornburgh*, 490 U.S. 401, 407 (1989)*; Procunier v. Martinez*, 416 U.S. at 408–09 *overruled on other grounds by Thornburgh*, 490 U.S. 401 (1989)). It is equally certain that "[t]he government's unjustifiable interference with correspondence [may] violate[] the First Amendment rights of both the recipient and the sender." *See Rowe*, 196 F.3d at 783. The problem with Lyons and

8

Carter's argument is that they have not established any attempt to mail books to an inmate at CCJ since learning of the policy.

Lyons testified that she did not send books or magazines to any other inmate at CCJ while Koger was housed there. (*Defts.' SOF* at ¶40 at 71:16–19). She explained that "you don't just send [books] to the jail" and that she "wouldn't just out of the blue send a book to some stranger." (*Defts.' SOF* at ¶40 at 71:20–24, 89:4–10). What's more, Lyons has not identified any other detainee at CCJ that she wishes to mail books since Koger's release. As a result, Lyons cannot claim the government has interfered with her correspondence when she has established no present desire to engage in such speech. *Bell*, 697 F.3d at 454 (stating that a "plaintiffs in a suit for prospective relief based on a 'chilling effect' on speech can satisfy the requirement that their claim of injury be 'concrete and particularized'" by showing, inter alia, "affidavits or testimony stating a present desire" to engage in such speech.)

Second, Lyons and Carter's argument misapplies the law to the facts of this case. Defendants' three-book policy does not regulate or censor the rights of persons to send mail to detainees at CCJ. Rather, the challenged policy falls under the subheading in the Handbook titled "Items Allowed in Your Cell". (*Pls.' SOF* at ¶17, Ex. 8 at 13–16.) Rules regarding mail are found elsewhere in the Handbook in "Chapter 8: Outside Communication." (*Id*. at 22–26.) The policy challenged here does not concern how much, how often, or what content Lyons and Carter are permitted to send to the detainees, it is simply a limitation on the number a books

9

an inmate is permitted to keep in his cell. Thus, Lyons and Carter's reliance on case law which addresses mailroom policies and the ability of outsiders to communicate with prisoners is inapplicable. Accordingly, their argument is not persuasive.

Lyons and Carter attempt to take another route to establish standing; claiming they have already met their burden because their allegations survived a motion to dismiss. *See Long et al., v. Dart*, No. 14-cv-6361, 2015 WL 1746489 (N.D. Ill. Apr. 15, 2015). This conclusion misrepresents their burden at this point in the case. At the summary judgment stage, an adverse party may not rest upon the mere allegations or denials of his pleading, s*ee* Fed. R. Civ. P. 56(e), and the rule that the plaintiffs' allegations will be accepted as true applies only to motions to dismiss, not to motions for summary judgment. *Dombrowski v. Dowling*, 459 F.2d 190, 192 n.4 (7th Cir. 1972). Now, Lyons and Carter must set forth specific facts rather than mere allegations. *See* Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11 (1986) (citing Fed. R. Civ. P. 56(e)). At the dismissal stage, this court ruled that Lyons and Carter had sufficiently *alleged* an injury-in-fact to confer standing, not that they had indeed established that standing. *Long*, 2015 WL 1746489 at *2. We now find that Lyons and Carter have not presented material facts which establish a case or controversy under Article III.

The evidence presented is clear. Lyons and Carter have never been housed at CCJ and have never been subject to the three-book policy, nor can they be punished for violation of the policy. Accordingly, both have failed to establish an injury-in-fact

under the case and controversy requirement of Article III. Therefore, their claims for both declaratory and injunctive relief cannot be allowed to proceed.

**B. Koger does not have standing to litigate his injunctive relief**

We now turn our discussion to the remaining plaintiff in this matter. Koger, unlike Lyons and Carter, was an inmate at CCJ who was subject to its three-book policy during his 300-day sentence. Defendants challenge Koger's standing to seek injunctive relief because he has since been released from CCJ and therefore is no longer subject to the policy.

In light of Kroger's non-custodial position, his standing analysis while seeking injunctive relief is governed by the Supreme Court's decision of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the Supreme Court reasoned that a plaintiff seeking injunctive relief under Article III must show that he or she is in immediate danger of sustaining some direct injury, taking particular note that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (citation omitted).

Here, Koger cannot establish a real and immediate threat. The mere possibility that Koger may sometime in the future return to CCJ and once again be subject to the policy does not establish a case or controversy sufficient under Article III. Even if Koger had standing to bring an injunction against Defendants, he must continue to have a personal stake in the outcome of the case to avoid dismissal of

his complaint for mootness. Generally, a case becomes moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) *quoting Powell v. McCormack*, 395 U.S. 486, 496 (1969). Under this general rule, it seems clear that Koger's claim against the three-book policy was moot once he was released from CCJ and no longer subject to it.

Yet, a case is still not moot "where even though the factual controversy is over, the case involves an order 'capable of rep[e]tition, yet evading review.'" *U.S. v. Peters*, 754 F.2d 753, 757–58 (7th Cir. 1985) *quoting Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911); *United States v. Edwards*, 672 F.2d 1289 (7th Cir. 1982). This exception is limited to situations where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (citation omitted). Although it is possible that the short nature of Koger's jail sentence satisfies the first element, Koger cannot show that he would be subject to the same policy again. *See Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11 (1975) ("Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted."); *see also Demery v. Arpaio*, 378 F.3d 1020, 1027 (9th Cir. 2004) (relying on *Gerstein* to find the plaintiff satisfied the first prong of the capable-of-repetition-yet-evading-review branch of the mootness doctrine.)

To satisfy the second prong, there "must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy*, 455 U.S. at 482. Koger has failed to establish that probability here. There is no evidence to indicate that since his release, Koger has or will return to CCJ. Although it is possible that Koger may once again be housed at CCJ, and therefore once again subject to its three-book policy, mere speculation about the future is not enough to pass muster under this test. Accordingly, his claim presented for injunctive relief is indeed moot.

**C. Koger's damages claim may not proceed**

What remains is Koger's claim against Defendants for compensatory damages based on the books that he says were confiscated from him. *Lyons*, 461 U.S. at 109 (the plaintiff retained his claim for damages, despite the fact that he lacked standing for injunctive relief.). The Handbook states that any property in excess of the amounts allowed of that kind of item is considered contraband, possession of which is illegal under Illinois law. (*Pls.' SOF* at ¶17, Ex. 8 at 16.) It then goes on to explain that disciplinary reports and possible criminal charges will be given to any inmate who is found to possess contraband. (*Id.*) Importantly, the Handbook does not specify where the property is held, if at all, once it is confiscated, or if it is to be destroyed.

Koger alleges that correctional officers confiscated more than thirty books from his cell during a search conducted on October 5, 2013. However, Sergeant

Peter Giunta, who was in charge of the search, testified that he had no personal recollection of a search or a taking of any of Koger's personal property. When read in a light most favorable to Koger, the record supports his account that correctional officers entered his cell and confiscated all books that were in excess of the number permitted by the Handbook. He states that he "never saw these books again." (*Pls.' SOF* at ¶6, Ex. 1 at 97:18–98:3.) Given that Koger has since been released from CCJ, it would likewise be a reasonable to infer that the books were destroyed or sent to CCJ's library rather than stored for Koger until they could be returned. However, because the Handbook does not provide any guidance on the destruction of contraband, to the extent the books were destroyed, there is no evidence that it was due to the policy at issue.

Kroger's statements do not state a colorable federal claim as the gist of Koger's complaint is that an officer wrongfully deprived him of his books. A local governmental actor's "negligent loss of property does not offend due process." *Davenport v. Giliberto*, 566 F. App'x 525, 529 (7th Cir. 2014) (*citing Daniels v. Williams*, 474 U.S. 327, 335–36 (1986)). Similarly, a deprivation of personal property caused by a local governmental actor's random and intentional conduct is not actionable under § 1983 if state courts provide an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533–34 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540–41 (1981). Illinois law provides such a remedy. *See Tucker v. Williams*, 682 F.3d 654, 661 (7th Cir. 2012) (holding that a state court suit for conversion or replevin were adequate post-deprivation remedies); *see also Jeron v. City of*

*Chicago*, No. 15 C 8074, 2016 WL 1450073, at *4 (N.D. Ill. Apr. 13, 2016) (same, collecting cases). As a result, any due process claim based on negligence or random intentional conduct as any remedy for the lack of post-deprivation process lies in state court, not in this court.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' motion for summary judgment [Doc. No. 115] is denied and Defendants' motion for summary judgment [Doc. No. 118] is granted.

SO ORDERED.   ENTERED:

*[signature: Maria Valdez]*

DATE: **September 29, 2017**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**