### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN OROZCO, as** | ) | |
| **administrator of the estate of** | ) | |
| **Gregory Koger,** | ) | |
| | ) | **No. 14 C 6361** |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge** |
| **v.** | ) | **Maria Valdez** |
| | ) | |
| **THOMAS J. DART and COOK** | ) | |
| **COUNTY, ILLINOIS,** | ) | |
| | ) | |
| **Defendants.** | | |

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 230] and Defendants' Motion for Summary Judgment [Doc. No. 241]. Also pending before the Court are Defendants' Motion to Strike Plaintiff's References to Director Moreci as Being a Rule 30(b)(6) Witness [Doc. No. 256]; Defendants' Motion to Strike Declaration of Kevin Long and Other Untimely Evidence [Doc. No. 239]; Plaintiff's Amended Motion for Leave to File Instanter a Sur-Reply Regarding Defendants' Motion to Strike Declaration of Kevin Long and Other Untimely Evidence [Doc. No. 252]; and Plaintiff's Motion to Bar Defendants From Relying on Undisclosed Evidence at Summary Judgment [Doc. No. 228]. For the reasons that follow, Plaintiff's motion for summary judgment is denied, Defendants' motion for summary judgment is granted, and the parties' ancillary motions are all denied as moot.

1

## DISCUSSION

## I.   PROCEDURAL POSTURE

Throughout its long lifespan,[1] this lawsuit has centered around Cook County Jail's policy that inmates are not allowed to have more than three books or magazines in their cells at a time. Plaintiff's decedent Gregory Koger[2] has asserted that jail officials confiscated books from him pursuant to that policy and that he never got the books back. Koger and other former plaintiffs brought this action under 42 U.S.C. § 1983, claiming that the three-book policy violated their right to free speech under the First Amendment.

The parties filed cross-motions for summary judgment. In granting Defendants' motion for summary judgment, this Court held that Koger lacked standing[3] to seek injunctive relief in light of his release from custody. *Lyons v. Dart*, No. 14 C 6361, 2017 U.S. Dist. LEXIS 160607, at *13-16 (N.D. Ill. Sept. 29, 2017). This Court further held that Koger's claim for damages failed because he had an adequate post-deprivation remedy in state court for negligent or random deprivation of his personal property. *Id.* at *16-18. After an appeal, the Seventh Circuit affirmed as to Koger's claim for injunctive relief, but remanded Koger's

---

[1] The Court assumes some familiarity with the somewhat convoluted procedural history of the case.

[2] Plaintiff Gregoy Koger is now deceased, and Brian Orozco has been substituted for Koger as the administrator of Koger's estate. For the sake of simplicity and clarity, this opinion will continue to refer to Koger as if he were the still-living Plaintiff.

[3] The separate claims of two former non-prisoner plaintiffs were also dismissed on standing grounds. Those former plaintiffs are no longer in the case.

damages claim in order for this Court to "determine exactly what policy the Jail is employing, how (if at all) it affected Koger, and if necessary [to] consider the validity of that policy and whether Koger is entitled to damages." *Lyons v. Dart*, 901 F.3d 828, 830 (7th Cir. 2018).

After remand, Koger and Defendants again filed cross-motions for summary judgment. This Court then initially granted Defendants' motion for summary judgment, reasoning that although the matter was remanded to this Court for a determination of the merits of Koger's due process damages claim, there was in actuality no due process claim in the case because Koger had not asserted one. *Koger v. Dart*, No. 14 C 6361, 2019 U.S. Dist. LEXIS 106447, at *5-7 (N.D. Ill. June 26, 2019). Koger then filed a motion to reconsider, prompting this Court to vacate its previous opinion and to issue another opinion on the parties' cross summary judgment motions. In that subsequent opinion, while again finding that Koger's procedural due process claim was unpled and thus nonviable, this Court also addressed whether Koger's First Amendment rights were violated by the jail's three-book policy when it resulted in the confiscation of his books. This Court answered that question in the negative and granted Defendants' motion for summary judgment, finding that Koger had failed to show that the three-book policy is not reasonably related to the jail's legitimate penological interests. *Koger v. Dart*, No. 14 C 6361, 2019 U.S. Dist. LEXIS 152878, at *24 (N.D. Ill. Sept. 9, 2019).

On a second appeal, the Seventh Circuit affirmed this Court's ruling "to the extent it [found] the Jail's three-book policy consistent with the First Amendment."

3

*Koger v. Dart*, 950 F.3d 971, 976 (7th Cir. 2020). However, the Seventh Circuit reversed this Court's holding as to Koger's procedural due process claim, finding that such a claim, though unpled, was part of the case and could be viable. *Id.* at 975. In remanding, the Seventh Circuit stated that, "[i]n addition to ascertaining the Jail's policy," this Court "will need to decide what choices, if any, were offered to Koger when the guards discovered the excess books and what became of them." *Id.* at 976. After the second remand, the parties filed their instant cross-motions for summary judgment.

## II.     FACTS[4]

Gregory Koger was an inmate at Cook County Jail ("CCJ") between July 23, 2013 and October 24, 2013, serving the last part of a 300-day sentence for misdemeanor charges. (Pl.'s LR 56.1 Statement at ¶ 1.) During this time, Koger asked friends to send him books, and jail records show that Koger received forty-two books and one magazine through the mail. (*Id.* at ¶¶ 2, 4.) While it is disputed whether Koger was allowed to possess more than three books in his cell, it appears that for most of his detention, Koger physically possessed more than three books in his cell at a time. (*Id.* at ¶ 3.)

CCJ's policy, as set forth in its Inmate Information Handbook ("Handbook"), is that inmates are not allowed to have more than three books or magazines in their cells at a time. (Defs.' LR 56.1 Statement at ¶¶ 2-3.) Specifically, the Handbook that

---

[4] Unless otherwise noted, the following material facts are undisputed or are deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

was in effect at the time of Koger's incarceration states that inmates may only possess: "THREE (3) TOTAL MAGAZINES OR BOOKS PER INMATE (religious material excluded)." (Pl.'s LR 56.1 Statement, Ex. 6 at 16.) The Handbook states that an inmate who has books or magazines in excess of this limit would be considered to be in possession of "contraband." (Pl.'s LR 56.1 Statement at ¶ 12; Defs.' LR 56.1 Statement at ¶ 44.)[5] However, CCJ's three-book policy is not strictly enforced and excess books and magazines are not generally confiscated from detainees at CCJ. (Defs.' LR 56.1 Resp. at ¶ 17; Defs.' LR 56.1 Statement at ¶ 28.)

Every living unit in CCJ is routinely searched every week or two, meaning that there are thousands of tier searches every year. (Defs.' LR 56.1 Statement at ¶ 41.) On October 5, 2013, CCJ correctional officers searched Deck 3A of Division 10 jail, where Koger was housed. (Pl.'s LR 56.1 Statement at ¶ 5.) Koger claims that correctional officers confiscated more than thirty books from him during the October 5, 2013 search and left him with three books, not bothering to ask which three books he wanted to keep. (*Id.* at ¶ 6.) Other inmates who were searched on October 5, 2013 have similarly stated that correctional officers confiscated books and magazines from them and they were not given a chance to specify which books they wanted to keep, such that they were left with three books at random. (*Id.* at ¶ 7; Pl.'s LR 56.1 Resp. at ¶ 23.)

---

[5] CCJ's Handbook defines both items "prohibited by criminal law" and "items or property in excess of the amounts allowed . . . for that kind of item" as contraband. (Pl.'s LR 56.1 Statement at ¶ 32.)

5

Defendants dispute that Koger had any books taken from him during the October 5, 2013 search. (Defs.' LR 56.1 Resp. at ¶ 6; Defs.' LR 56.1 Statement at ¶ 22.) Sergeant Peter Giunta was the CCJ officer in charge of the search team that conducted the October 5, 2013 search. (Pl.'s LR 56.1 Statement at ¶ 8.) Although Sergeant Giunta testified that he had no personal recollection of the particular search, he did not recall any books or magazines being taken. (*Id.*)

As pointed out by Koger, pursuant to CCJ's policy in effect at the time of the October 5, 2013 search, jail officials were required to "maintain a thorough and accurate record of all contraband confiscated" during cell searches. (*Id.* at ¶ 9.) The Search Report generated for the October 5, 2013 search does not indicate that any books were taken, and rather states that "[a]ll garbage and extra linen and uniforms [were] removed from tier." (Defs.' LR 56.1 Resp. at ¶ 9.) With respect to the Search Report, Sergeant Giunta testified as follows:

> Q. What is the purpose of this [Search Report]?
>
> A. To itemize any contraband found within the search.
>
> Q. . . . Did you fill this out?
>
> A. I did.
>
> Q. Is this your handwriting?
>
> A. Yes. . . .
>
> Q. And would you have filled out this form on the same day that the search was conducted?
>
> A. Yes. . . .
>
> Q. If items are seized during one of these searches that aren't actually listed here, is there somewhere you have to document what is –

    A.     Well, yes. At the bottom of the sheet, there's a section where it says, [n]o contraband found, that's where you would list it. And if it was anything excessive or more than that, more times than not, I would generate an incident report if it needed to be explained in further detail.

    Q.     So typically if you, during one of these searches, seized something that wasn't listed above in these categories of contraband, you would write in this bottom section what it was?

    A.     Yes. . . .

    Q.     With regard to this particular search on October 5, 2013, do you know whether you generated an incident report?

    A.     I don't believe I did. . . .

    Q.     Were any books or magazines taken during this search?

    A.     Not that I recall, no.

    Q.     Would you document it somewhere if books or magazines were taken?

    A.     Well, yes. I document it in the same section I referred to earlier.

(Pl.'s LR 56.1 Statement, Ex. 3 at 14:12-19; 15:7-9; 21:15-22:4; 22:13-16; 23:24-24:6.)

In contrast to the testimony of Koger and the other inmates, Sergeant Giunta testified that his common practice with respect to CCJ's three-book policy was as follows:

> I would basically interview the inmate and let him know that he has an excessive amount of whether it be books or magazines, and that he's generally allowed three, but pick the ones you want. The rest I would bag. I would place in a bag or some type of box or some type of enclosure, and it would be . . . the inmate's responsibility to have them either sent home or to have some family members or someone else come and pick them up for him.

(Defs.' LR 56.1 Statement at ¶ 23; Defs.' LR 56.1 Resp. at ¶ 19; Pl.'s LR 56.1 Statement at ¶ 25.) Sergeant Giunta's asserted practice is not reflected in a written

policy, but he testified that it was the widespread practice at CCJ. (Defs.' LR 56.1 Resp. at ¶ 19.)

Koger disputes that the practice described by Sergeant Giunta is the practice that was followed for the October 5, 2013 search. (Pl.'s LR 56.1 Resp. at ¶ 23.) Koger further disputes that the practice described by Sergeant Giunta represents the widespread practice at CCJ. (*Id.* at ¶ 25.) Plaintiff points to the testimony of Daniel Moreci, CCJ's First Assistant Executive Director, who stated that books confiscated from inmates by correctional officers are "[m]ost likely destroyed, thrown in the garbage." (*Id.* at ¶ 53.)

With respect to the October 5, 2013 search, Koger testified as follows:

Q. So am I correct that on or about October 5, 2013, your cell was searched?

A. Yes.

Q. Tell me about that.

A. Well, we had heard from other decks that they had already shaken down their cells. And in the days leading up to that, there were administrators of the Cook County Jail who came into our deck and told us you can only have three books. Not verbatim, but something along the lines of get rid of any more books than three books because we're coming to take that stuff. And that occurred for at least a couple of days, including administrators, maybe not in suits, but dress clothes to correctional officers. So we knew that this was coming. And on the day that it happened . . . they took us to the yard or the gym [at] 9:00 in the morning, I don't know, 10:00 in the morning . . . and then we came back I think maybe by 2:00 o'clock-ish, 1:30-ish . . . and all of our books were gone.

(Pl.'s LR 56.1 Statement at ¶ 33.)

Koger was familiar with CCJ's Handbook, and had a copy of the Handbook, though he did not make any significant effort to read it. (Defs.' LR 56.1 Statement

at ¶¶ 2-4.) The Handbook informs inmates that Correctional Rehabilitation Workers ("CRW's") may "help [detainees] with questions about [their] money [or] personal property." (Pl.'s LR 56.1 Resp. at ¶ 7.) Specifically, the Handbook states:

> CRW's assigned to your living unit can help you with questions about your money, personal property, visitation assistance, filling out any necessary paperwork, or arranging help through outside agencies, such as Child Welfare. CRW's assigned to your living unit are there to help you. CRW's are on duty seven (7) days a week. CRW's typically come between 8 am and 3 pm.

(Pl.'s LR 56.1 Statement, Ex. 6 at 8.) The Handbook also has a subsection entitled "Releasing Personal Property," which states:

> You may authorize an individual to retrieve your personal property. Upon the request of the inmate, CRW's will assist in the release of personal property to another individual or agency. The inmate will sign a release form identifying the name and address of the person authorized to receive the property. The receiving party must have valid picture identification.

(*Id.* at 26.)

With respect to the ability of CCJ detainees to send items out of the facility through the mail, shipping boxes and packing tape are not available for inmates to purchase. (Pl.'s LR 56.1 Statement at ¶ 26.) However, detainees can send outgoing mail and can purchase large 9.5 x 12.5 manila envelopes through the commissary that can fit books or magazines. (Defs.' LR 56.1 Statement at ¶ 9; Pl.'s LR 56.1 Resp. at ¶ 8.) The Handbook informs detainees that "[i]ndigent inmates may request postage through a CRW. (*Id.* at ¶ 10.) At all relevant times in September and October 2013, Koger had more than $100.00 in his inmate trust account. (*Id.* at ¶ 11.)

Despite the advance warning he described having received, Koger chose not to pursue opportunities to divest himself of excess books prior to the October 5, 2013 search. (Pl.'s LR 56.1 Resp. at ¶ 48.) Koger does not dispute that he could have given away his excess books to other detainees on his tier. (*Id.* at ¶ 47.) Further, when asked why he did not take any other steps to get rid of books in excess of the three-book limit after he was given notice of the search (*e.g.*, by sending the books to friends or family outside of CCJ), Koger responded: "Because they were my books. There was no reason for me to get rid of my books." (Defs.' LR 56.1 Statement at ¶ 16.) Koger testified that after the search he did not ask any officers what happened to his confiscated books and did not file a grievance to seek redress through CCJ's internal administrative grievance system.[6] (*Id.* at ¶¶ 18, 49.)

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be

---

[6] Per CCJ's Handbook, detainees can file grievances if they believe their "personal property was mishandled" or their rights are being infringed upon. (Defs.' LR 56.1 Statement at ¶ 13.)

insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006) (quotations and alterations omitted).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Where, as here, the parties submit cross-motions for summary judgment, "the Court considers each motion separately and views the evidence in the light most favorable to the party against whom each motion is under consideration." *Fifth Third Mortg. Co. v. Kaufman*, No. 12 C 4693, 2016 U.S. Dist. LEXIS 63869, at *13-14 (N.D. Ill. May 14, 2016) (citation omitted); *see also Bd. of Educ. of the Dist. 130 Pub. Sch. v. Ill. State Bd. of Educ.*, No. 96 C 666, 1997 U.S. Dist. LEXIS 12921, at *30-31 (N.D. Ill. Aug. 25, 1997) ("Where the parties submit cross-motions for summary judgment, the court must consider the merits of each motion and, for each, draw all reasonable inferences in favor of the non-movant.") (citations omitted). As such, the Court must take "the facts in the light most favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment*

*Servs., LLC v. Int'l Union, Local Union 150*, 335 F.3d 643, 648 (7th Cir. 2003). Put differently, the Court must "credit the nonmovant's version of any disputed facts as to each motion." *Hicks v. Clark*, No. 13 C 989, 2017 U.S. Dist. LEXIS 124910, at *6 (N.D. Ill. Aug. 8, 2017); *see also Cent. Mfg. Co. v. Brett*, No 04 C 3049, 2005 U.S. Dist. LEXIS 23379, at *15 (N.D. Ill. Sep. 30, 2005) ("[T]he Court will consider the merits of each cross-motion separately and draw all reasonable inferences and resolve all factual uncertainties in favor of the non-movant.").

## IV.   ANALYSIS

Per the procedural history of the case explained above, Koger's sole claim at issue is a procedural due process claim. "The cornerstone of due process is notice and the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 571 (7th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). To succeed on his procedural due-process claim, Koger must show "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (citation omitted). Koger and Defendants each assert that they are entitled to judgment as a matter of law on the procedural due process claim. The Court will separately address each respective motion for summary judgment below in turn.

### A.   Plaintiff's Motion for Summary Judgment

As stated by Koger, "[i]n order for Plaintiff to have a valid legal claim, he had to have suffered a harm." (Pl.'s Reply at 14.) The Court agrees with that axiomatic

proposition. If Koger's books were not confiscated in the first instance, his procedural due process claim fails on the first element because he was not deprived of a protected interest and he suffered no harm. Per the factual recitation set forth above, Defendants dispute that any books were in fact taken from Koger during the October 5, 2013 search. Koger admits that "Defendants do dispute that any books were taken," but argues that "there is no legitimate evidentiary basis for such a dispute." (*Id*. at 15.) The Court disagrees.

Sergeant Giunta – the officer in charge of the October 5, 2013 search – testified that he did not recall any books having been taken during the search and further testified that he would have documented if any books were taken. Additionally, the Search Report generated for the October 5, 2013 search does not indicate that any books were taken. In pointing to that testimony and documentary evidence to dispute that books were confiscated, Defendants have raised a genuine issue of fact on a fundamental issue in the case, as a reasonable jury could conclude that no books were in fact taken from Koger. *See* Fed. R. Civ. P. 56(c)(1)(A); *Lyons*, 901 F.3d at 830 ("It is also possible that Koger's allegations are false and that no substantive issue needs resolution: the guards deny removing any of his reading matter.") In light of this genuine dispute as to a material fact, Plaintiff's motion for summary judgment must fail. As admonished by the Seventh Circuit on appeal, "any disputed issues of material fact" in this case "are the province of a jury." *Koger*, 950 F.3d at 976.

Though Koger is equivocal throughout the briefing as to the precise nature of his challenge, Koger has attacked CCJ's "policy" on the grounds that "the absence of any policy amounts to a policy to let the guards do what they want with the books they confiscate." (Pl.'s Mot. at 21 (internal quotations omitted).) And, according to Koger, "if the court finds that there is a dispute of fact regarding whether books were taken from Koger, this court should still decide as a matter of law whether the jail's written policies (about which there are no factual disputes) are constitutional." (Pl's Reply at 15 n.8.) However, in resolving Koger's motion for summary judgment, this Court cannot adjudicate CCJ's policy in the abstract, untethered from an adjudication of Koger's personal due process claim (which fails if Koger's books were not confiscated). *See Voss v. Marathon Cty.*, No. 18-cv-540, 2021 U.S. Dist. LEXIS 8744, at *16 (W.D. Wis. Jan. 15, 2021) ("But even if an informal policy existed, Voss can't challenge a policy in the abstract. He must show that *his* rights were violated by the policy.") (emphasis in original, citation omitted); *Kerr v. W. Palm Beach*, 875 F.2d 1546, 1553 (11th Cir. 1989) ("[W]e should not consider the constitutionality of municipal policies in the abstract; instead . . . the federal courts are to focus only on the constitutionality of specific applications of a challenged policy to specific factual circumstances.") (citation omitted). As stated by the Seventh Circuit on appeal, "a bad policy would not lead to damages if it did not injure Koger." *Koger*, 950 F.3d at 976.

### B. **Defendants' Motion for Summary Judgment**

As an initial matter, the Court notes that, whereas it was required to credit Defendants' version of the facts (that no books were taken) in resolving Plaintiff's motion for summary judgment, in adjudicating Defendants' motion for summary judgment, the Court must accept Koger's factual assertion that his books were in fact confiscated and disposed of. *See Koger*, 950 F.3d at 974 ("The descriptions in this opinion track Koger's affidavits, which we must accept for now because he is the party opposing the Jail's motion for summary judgment."); *Hicks*, 2017 U.S. Dist. LEXIS 124910, at *6 (N.D. Ill. Aug. 8, 2017) ("Where as here cross motions for summary judgment are involved, the principles of Rule 56 demand a dual perspective that this Court has sometimes described as Janus-like: It must credit the nonmovant's version of any disputed facts as to each motion, and that can on occasion lead to the denial of both motions."); *Fischer v. Liberty Life Assurance Co.*, No. 05 C 3256, 2008 U.S. Dist. LEXIS 46528, at *7-8 (N.D. Ill. June 16, 2008) ("This separate consideration allows for different conclusions on cross-motions [for summary judgment], *even on the same question*, notwithstanding the fact that the evidence in the administrative record is identical.") (emphasis in original). While Koger's motion for summary judgment necessarily fails in light of Defendants' dispute that any books were taken, Defendants' motion for summary judgment can still succeed if Koger's procedural due process rights were not violated despite his books having been confiscated and disposed of.

As stated above, to succeed on his procedural due process claim, Koger must show (1) the deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation. *Michalowicz*, 528 F.3d at 534. Each element will be discussed below in turn.

    1.  *Plaintiff Had a Protected Property Interest in His Excess Books.*

In order to make out a claim for a due process violation, a plaintiff must first establish that he was deprived of a protected interest, and if so, the Court then determines what process was due under the circumstances. *See Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). So, the first issue is whether Koger had a protected interest that could have been deprived. With respect to the protected nature of Koger's interests in his excess books, there are two types of interests at play – possessory interests and property interests. The possessory interest involves jail officials' right to restrict inmates from possessing more than three books or magazines in their cells at a time. The property interest involves the jail's ability to confiscate books in a manner consistent with due process.

Koger concedes that his "possessory interest is no longer at issue in this case, given this Court's ruling (affirmed by the Seventh Circuit) that the jail's policy concerning how many books and/or magazines prisoners at the jail may keep in their cells is constitutional." (Pl.'s Mot. at 9.) Koger asserts that, despite not having a possessory interest in his excess books, he retained a property interest in the books. However, Defendants argue that "the only items taken from Plaintiff were expressly defined as contraband" and "Plaintiff never had any property interest in

contraband, so any taking and destruction of that contraband would not violate the Due Process Clause." (Defs.' Mem. at 1.) The problem for Defendants is that the Seventh Circuit's statements in this case foreclose their contention.

On appeal, the Seventh Circuit stated that "books are not contraband," while also noting that excess books "may be a kind of contraband, but only while in the cell." *Koger*, 950 F.3d at 975. The Court of Appeals went on to explain:

> We have seen before, and rejected, an argument that items deemed contraband only because found in the wrong hands may be summarily destroyed. Agents seized more than 30 firearms from Leroy Miller in connection with his arrest for aiding and abetting a felon's unlawful possession of weapons. They missed the deadline for initiating forfeiture proceedings but contended that the weapons, as contraband, could be destroyed anyway. We disagreed, distinguishing Miller's possessory interest in the guns (forbidden) from his property interest (which continued). *United States v. Miller*, 588 F.3d 418 (7th Cir. 2009). Miller, as owner, remained free to sell the guns, have the guns sold for his account, or give them away, though new possessors could not hold them for Miller's future use. What was true of Miller is true of Koger too: he lost a possessory interest in the books by keeping too many in his cell, but he did not automatically lose his property interest.

*Id.* at 975-76.

In keeping with the Seventh Circuit's opinion, this Court agrees with Koger that the excess books and magazines at issue are not illegal, and thus inmates do not lose their property interest in them when they are seized in connection with a policy that merely prohibits possession of the books in the inmates' cells. This Court ultimately concludes that, while Koger lost his possessory interest in his books by having more than three books in his cell in violation of the jail's three-book policy, he did not lose his property interest in the excess books. *See id.* at 975 ("Defendants make different argument: that the books (in excess of three) were contraband,

17

which public officials may seize and destroy without notice, hearings, or compensation. That proposition is far from clear: That public officials *call* something contraband does not make it so.") (emphasis in original).

2. *Plaintiff Was Given Adequate Pre-Deprivation Notice and a Fair Opportunity to Discard His Excess Books*

As framed by Koger, "due process requires jail officials to give inmates[] pre-deprivation notice and a fair opportunity to discard their personal property before permanently depriving inmates of their books or magazines." (Pl.'s Mot. at 8.) Pertinent to the topic of notice and opportunity for disposal, Koger himself testified that, in the days leading up to the October 5, 2013 search, multiple CCJ administrators and correctional officers warned him in-person that the three-book policy would be enforced in an upcoming search and suggested that he get rid of his excess books prior to the search. Per the undisputed facts in this case, upon being warned of the search and the coming enforcement of the three-book policy, Koger had the option to give his books to other detainees. Furthermore, CCJ's Handbook informed Koger that he could release his personal property to outside individuals and purchase mailing envelopes large enough to fit books. The Handbook further informed Koger that he could seek the assistance of Correctional Rehabilitation Workers for help with questions about his personal property. Koger did none of those things. Per the Handbook, Koger also had the ability to file a grievance after the fact if he believed his personal property had been mishandled. Koger did not do that either. In light of these undisputed circumstances, the Court finds that Koger was given adequate pre-deprivation notice and a fair opportunity to discard his

18

excess books. *Cf. Forbes v. Trigg*, 976 F.2d 308, 314 (7th Cir. 1992) ("[If the prison]
makes it an offense for an inmate to have in his cell more than three books, and if
an inmate, not knowing of the [rule], has four books in his cell, and if an officer,
upon discovering the four books, institutes disciplinary proceedings against the
inmate without first informing him of the three-book limit and giving him a chance
to get rid of the fourth book, obviously problems of due process arise.") (quoting *Meis
v. Gunter*, 906 F.2d 364, 367 (8th Cir. 1990)).[7]

According to Koger, however, "[t]his case is about the requisite process due
*after* his books were confiscated, not before." (Pl.'s Reply at 7 (emphasis in original).)
The Court finds that argument unavailing. That is because "fastidious notice
procedures are not required in order for [a] prison to enforce its officers' verbal
orders." *Forbes*, 976 F.2d at 314 (7th Cir. 1992) (citation omitted). Here, Koger was
given a fair warning that his excess books would be confiscated. *Cf. Hayes v. Fla.
Dep't of Children & Families*, No. 4:10cv541, 2012 U.S. Dist. LEXIS 95698, at *13
(N.D. Fla. May 11, 2012) ("Plaintiff's due process rights require that he receive prior
notice, or 'fair warning,' that his conduct violates a rule before officials of FCCC can
confiscate Plaintiff's property or punish him in some material way."). Moreover,

---

[7] On the last appeal, the Seventh Circuit stated that Koger "was entitled to sell or ship the
books, or reclaim them from the Jail at the end of his confinement." *Koger*, 950 F.3d at 975.
This Court does not take the Court of Appeals' statement to be a definitive pronouncement
as to the precise processes that had to be in place at CCJ in order for Koger's procedural
due process rights to have been satisfied. The Court finds that the processes made available
to Koger are the functional equivalent of the processes previously envisioned by the
Seventh Circuit during the first appeal. *Lyons*, 901 F.3d at 830 ("Koger challenges the Jail's
policy, and given the nature of that policy (as Koger describes it), some form of pre-
deprivation process – such as asking a prisoner to designate what should be done with the
excess books – would have been practical.").

19

Koger had post-deprivation processes available to him that he chose to forego. Koger's decision not to partake in any post-deprivation efforts makes his "claim that he was deprived of procedural due process smack[] of a self-inflicted wound." *Welter v. City of Elgin*, No. 12-cv-6837, 2013 U.S. Dist. LEXIS 45113, at *17 n.6 (N.D. Ill. Mar. 29, 2013). And finally, the Court agrees with Defendants that, as a matter of public policy, it would be unwise to encourage inmates (who have received warnings of upcoming policy enforcements) not to divest themselves of contraband before it is physically taken from them.

The undisputed facts show that, before the confiscation of his books, Koger was on notice of the three-book rule in the Handbook, was given multiple in-person warnings, and had opportunities to divest himself of his excess books through various means. Koger simply failed to take advantage of any of the processes made available to him. Ultimately, based on the record before the Court, there were sufficient procedural protections surrounding the confiscation of Koger's excess books. Accordingly, Koger's procedural due process claim fails as a matter of law, and Defendants are entitled to summary judgment.

## C. **Related Motions**

Defendants have moved to strike Plaintiff's references to Director Moreci as being a Rule 30(b)(6) witness [Doc. No. 256]. Whether or not Director Moreci is considered a Rule 30(b)(6) witnesses is immaterial to the determinations reached by the Court herein. Accordingly, Defendants' motion to strike is denied as moot.

20

Defendants have also moved to strike the Declaration of former inmate Kevin Long, along with Plaintiff's citations to policies from the Georgia Department of Corrections and the Wisconsin Department of Corrections [Doc. No. 239]. The Declaration of Kevin Long and the referenced policies of prisons in other states are immaterial to the determinations reached by the Court herein. Accordingly, Defendants' motion to strike that evidence is denied as moot. Plaintiff's related motion to file a sur-reply [Doc. No. 252] with respect to Defendants' motion to strike is also denied as moot.

Finally, Plaintiff has moved to strike previously-undisclosed CCJ policies offered by Defendants along with the testimonies of Correctional Rehabilitation Workers Veronica Butler and Lynea Fenderson [Doc. No. 228]. The referenced CCJ policies and the testimony provided by Ms. Butler and Ms. Fenderson are immaterial to the determinations reached by the Court herein. Accordingly, Plaintiff's motion to strike is denied as moot.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Doc. No. 230] is denied, and Defendants' Motion for Summary Judgment [Doc. No. 241] is granted. The following related motions are denied as moot: Defendants' Motion to Strike Plaintiff's References to Director Moreci as Being a Rule 30(b)(6) Witness [Doc. No. 256]; Defendants' Motion to Strike Declaration of Kevin Long and Other Untimely Evidence [Doc. No. 239]; Plaintiff's Amended Motion for Leave to File Instanter a Sur-Reply Regarding Defendants' Motion to Strike Declaration of Kevin Long and Other Untimely Evidence [Doc. No. 252]; and Plaintiff's Motion to Bar Defendants From Relying on Undisclosed Evidence at Summary Judgment [Doc. No. 228].

**SO ORDERED.**                    ENTERED:

**DATE:**   **November 16, 2021**          _____
                                   **HON. MARIA VALDEZ**
                                   **United States Magistrate Judge**

22